UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICHAEL A. PALMISCIANO,          :
          Plaintiff,             :
                                 :
          v.                     :          CA 07-216 M
                                 :
MICHAEL J. ASTRUE,               :
Commissioner,                    :
Social Security Administration,  :
          Defendant.             :


**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB") under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act").  Plaintiff Michael A. Palmisciano ("Plaintiff") has filed a motion to reverse the decision of the Commissioner.  Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.  With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b).

**Errors Claimed**

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred 1) in finding at step 3 of the sequential evaluation process that Plaintiff's seizure disorder did not meet or equal the Commissioner's Listing of Impairments at Listing 11.02 or Listing 11.03; and 2) in finding that Plaintiff had the residual functional capacity ("RFC") to perform other work.

**Discussion**

At step 3, Plaintiff has the burden to show that he has an impairment or combination of impairments that meets or equals the severity of an impairment appearing in the Listing of Impairments (20 C.F.R. Part 404, Subpt. P, App. 1 ("Listing(s)").  <u>Dudley v. Sec'y of Health & Human Servs.</u>, 816 F.2d 792, 793 (1st Cir. 1987).  Plaintiff contends that he met the requirements of the following Listings:

> 11.02 *Epilepsy--convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena;* ***occurring more frequently than once a month in spite of at least 3 months of prescribed treatment****.* With
>
>> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>>
>> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 11.03 *Epilepsy--nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena;* ***occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment****.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.02, 11.03 (bold added).

In support of this contention, Plaintiff cites his testimony that he experienced about two seizures per week even while taking medication.[1]  <u>See</u> Plaintiff's Memorandum in Support of His Motion

---

[1] Plaintiff testified that he experienced seizures "two and three times a week," (R. at 277); see also (R at 279), even while taking medication, (<u>id.</u>).  The ALJ found that Plaintiff's statements concerning the frequency and persistence of the seizure disorder symptoms were not entirely credible.  (R. at 17)  The Court finds that the ALJ adequately explained the basis for this finding, (R. at 16-17), and that it is supported by

to Reverse the Decision of the Commissioner ("Plaintiff's Mem.")
at 7 (citing Record ("R.") at 277).  Plaintiff also cites medical
records which allegedly "report seizures from approximately once
a month, (Tr. 107-110)[,] to several times a week, (Tr. 185)"[2]
Id.

Listings 11.02 and 11.03 fall under the neurological
impairments provision, Section 11.00 in Part A of Appendix 1 to
Subpart P, Regulations No. 4, which provides, in pertinent part:

> In epilepsy, regardless of etiology, degree of impairment
> will be determined according to type, frequency,
> duration, and sequelae of seizures.  At least one
> detailed description of a typical seizure is required.
> Such description includes the presence or absence of
> aura, tongue bites, sphincter control, injuries
> associated with the attack, and postictal phenomena.  The
> reporting physician should indicate the extent to which
> description of seizures reflects his own observations and
> the source of ancillary information.  Testimony of
> persons other than the claimant is essential for
> description of type and frequency of seizures if
> professional observation is not available.

20 C.F.R. Part 404, Subpt. P, App. 1, Section 11.00.A.[3]

Thus, as the Commissioner points out, Plaintiff must produce
at least one detailed description of a typical seizure,
preferably from his own treating source, or, if that is not
possible, from someone other than himself.  See Defendant's
Memorandum of Law in Support of Motion for an Order Affirming the
Decision of the Commissioner ("Defendant's Mem.") at 7.

_____

substantial evidence in the record.

[2] Plaintiff overstates what this page of the record
reflects.  It indicates Plaintiff reported that he "gets seizures
approximately one time per week," (R. at 185).

[3] Sections 11.02 and 11.03 contain similar language on the
requirement of producing at least one detailed description of a
typical seizure.  See 20 C.F.R. Part 404, Subpt. P, App. 1 §§
11.02 and 11.03.

Plaintiff failed to this.  As noted by the Commissioner:

> Here, the only descriptions of plaintiff's seizures are
> recitations of his own reports of sometimes seeing a
> white light, becoming unconscious, shaking all over,
> losing control of bodily functions and being no good
> until the next day (Tr. 185, 278, 285).  No attending or
> treating physician ever actually observed these seizures,
> nor did plaintiff ever produce evidence of these seizures
> from a third person.  As section 11.00A makes clear,
> where a physician has not observed a seizure, a
> description from someone other than plaintiff is
> "essential[.]"  <u>Id.</u>  Thus, plaintiff failed to meet the
> necessary evidentiary requirement of providing a
> detailed description of his seizures under the listings.

> With respect to the frequency of seizures required
> under sections 11.02 and 11.03, the only such evidence
> on this point is from plaintiff's own self-reports,
> again despite the "essential" need for plaintiff to
> produce independent documentation as to the frequency
> of seizures from a physician or other person.  20
> C.F.R. Part 404, Subpart P, Appendix 1, § 11.00.A.
> Such independent documentation would be particularly
> important here, given that the ALJ found that
> Plaintiff's statements concerning the frequency and
> persistence of the seizure disorder symptoms
> were not entirely credible (Tr. 17).  Further, as
> Social Security Ruling ("SSR") 87-6 makes clear, due to
> advances in medication, "most epileptic seizures are
> controllable and individuals who receive appropriate
> treatment are able to work," and "situations where the
> seizures are not under good control are usually due to
> the individual's noncompliance with the prescribed
> treatment rather than the ineffectiveness of the
> treatment itself."  <u>Id.</u>, 1987 WL 109184[,] at *1
> (1987).  Such is the case here where the proffered
> medical records and plaintiff's testimony establish
> that while plaintiff has been under a prescribed daily
> regimen of anticonvulsive drugs since 1991 (<u>see</u>, e.g.,
> Tr. 98-99, 105, 107, 108, 112, 120, 124, 133, 141, 185,
> 201, 286-287), blood work, during the time period
> reasonably contemporaneous with plaintiff's alleged
> onset date, consistently revealed that plaintiff had no
> anti-convulsive medication in his system (Tr. 115, 116
> 127, 128, 129) or the medication level detected was at
> less than an acceptable steady state therapeutic range
> (Tr. 114, 186).

Defendant's Mem. at 7-8.  The Court finds the above argument persuasive and adopts it.

Plaintiff further contends that the reasoning the ALJ used in reaching her conclusion that Plaintiff was non-compliant with medication was flawed.  See Plaintiff's Mem. at 8.  While acknowledging that the medical reports supported this conclusion, Plaintiff faults the ALJ for allegedly not considering the possibility that the low (or non-existent) medication levels "could have been due, at least in part, to his 'individual idiosyncrasy in absorption of metabolism of the drug' as stated in the regulations."  Id. (presumably quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1).[4]  Plaintiff further faults the ALJ for not

---

[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1 provides in relevant part:

11.00 Neurological

Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken.  When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. **Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug**.  Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels.  Where adequate seizure control is obtained only with unusually large

5

seeking clarification from Mr. Palmisciano's own doctors or testimony from a medical expert on this issue. Id. Plaintiff also complains that the ALJ failed to consider whether Mr. Palmisciano had good reason for failing to take his medications, such as his inability to pay for them. See Plaintiff's Mem. at 9

The Court finds no error in the ALJ's analysis of Plaintiff's compliance with his prescribed medication regimen. The Court again finds the argument by the Commissioner persuasive and adopts it:

> In the instant case, it was noted that on August 11, 2003, while being treated for a head laceration, no Phenobarbital had been detected in plaintiff'[s] blood. (Tr. 124, 127). Plaintiff initially told the attending physician that he had run out of his medication (Tr. 126), yet upon discharge, he stated that he had Phenobarbital at home. (Tr. 127). Similarly, in May 2005, plaintiff stated that his seizures were occurring once or twice a week; however, he also reported that he had been without Phenobarbital for three weeks and acknowledged that the seizures were less frequent when he was compliant with his prescribed medication (Tr. 183).
>
> On August 4, 2005, blood tests showed that the medication level in plaintiff's blood was again sub-therapeutic and the daily dosage was increased (Tr. 185-188), but in February 2006 it was reported that plaintiff had not picked up his medication from the dispensing pharmacy since August, 2005. (Tr. 203). Upon release from the Rhode Island Adult Correctional Institute in February, 2006, plaintiff was provided with a 30 day supply of Phenobarbital, yet nothing in the documentary evidence provided indicates that he sought a renewal script or that he visited a physician

---

> doses, the possibility of impairment resulting from the side effects of this medication must be also assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (bold added).

> with seizure complaints until September, 2006 when he
> returned to Neurology Clinic at Rhode Island Hospital.
> In light of plaintiff's haphazard pattern of prescribed
> medication use and the intermittent resort to ongoing
> medical care, defendant submits that ALJ Gibbs here
> reasonably found that plaintiff was rarely compliant
> with the prescribed medication regimen and therefore,
> it was not necessary for the trier of fact to proceed
> to consideration of whether plaintiff's therapeutically
> inadequate  serum  levels  were  the  result  of  an
> individual idiosyncrasy in absorption of metabolism of
> the medication.

Defendant's Mem. at 8-9.


Further, with regard to Plaintiff's contention that the ALJ
should have sought clarification from Mr. Palmisciano's own
doctors or sought the assistance of a medical expert, the court
finds the following language from Powell v. Barnhart, 69 Fed.
Appx. 405 (10th Cir. 2003), to be equally applicable to the
instant matter:

> In any event, given the rarity of the condition in
> question, the speculative nature of [plaintiff]'s present
> suggestion  that  it  could  be  the  cause  of  his
> sub-therapeutic blood serum levels (particularly in the
> face of other evidence indicating that he did not comply
> with  his  prescribed  regimen),  and  the  failure  of
> [plaintiff]'s counsel to ask the ALJ to pursue the
> matter, we do not think the ALJ erred in failing to
> anticipate and assist [plaintiff]'s current effort to
> avoid the consequences of his failure of proof under the
> listing.

Id. at *408 n.1.

As for Plaintiff's complaint that the ALJ did not consider
the possibility that Mr. Palmisciano had good reason for not
taking his medication, Plaintiff did not acknowledge being non-
compliant, but indicated that "[t]aking the medicine, it doesn't
help." (R. at 251)  He also indicated that he took his
medications "everyday." (R. at 277)  Moreover, the ALJ expressly
stated that her finding regarding compliance was limited to the

issues of listing level severity and credibility.  (R. at 17 n.5)
Thus, the ALJ did not use the finding regarding Plaintiff's
compliance with prescribed medication as a basis for denying his
claim for benefits.

With respect to Plaintiff's second claim of error, i.e., his
contention that substantial evidence does not support the ALJ's
finding that Plaintiff has the RFC to perform other work, the
Court is satisfied that the requisite amount of evidence is
present in the record.  The Court adopts in this regard the
following portion of the Commissioner's memorandum:

> [T]he reports and opinions of plaintiff's treating and
> examining medical sources indicate that plaintiff's
> seizure disorder was responsive to the prescribed
> treatment modality and none of plaintiff's treating or
> attending physicians ever indicated that they believed
> the plaintiff to be completely disabled from performing
> all substantial gainful work activity.  Moreover, Rosario
> Palmeri, M.D., a non-examining medical consultant for the
> Rhode Island Disability Determination Services, reviewed
> the existing medical record on May 17, 2004, and rendered
> an assessment of plaintiff's functional capabilities (Tr.
> 157-164).  Based upon that review, Dr. Palmeri indicated
> that while plaintiff's seizure disorder had more than a
> minimal impact on his abilities to perform certain
> environmental related aspects of work activity, the
> plaintiff did not experience any exertional limitations
> from his impairment (Tr. 158, 161).  In this regard, it
> is important to note that ALJ Gibbs did not blindly adopt
> the findings and conclusions of the agency's consultants,
> but rather made her assessment based upon her
> consideration of the evidentiary record in its entirety.
> Such a determination was permissibly based upon the
> proffered evidence and the inferences drawn from the
> reported findings, Evangelista v. Secretary of Health and
> Human Services, 826 F.2d 136, 144 (1st Cir. 1987), and as
> such was well within the ALJ's province as trier of fact.
> Torres v. Secretary of Health and Human Services, 668
> F.2d 67, 68 (1st Cir. 1981).

Defendant's Mem. at 10.

Finally, Plaintiff also argues that the ALJ lacked an
opinion from a physician who had reviewed the entire medical

record and that the opinion from the state agency physician in the record was given in May of 2004, (R. at 157-65), and was therefore outdated.  While this circumstance has in some instances caused the Court to conclude that an ALJ's finding is not supported by substantial evidence, this has usually involved circumstances where the subsequent medical evidence reflects a worsening of the plaintiff's condition.  Here Plaintiff testified at the October 10, 2006, hearing that he had been experiencing seizures two to three times a week "[f]or about three years," (R. at 279), which would means since approximately October 2003.  Thus, Plaintiff's testimony does not indicate a worsening of his seizure disorder, but a continuation at the same level.  The Court finds that the ALJ was entitled to rely upon the opinion of the state agency physician in these circumstances.

### Summary

The ALJ's finding that Plaintiff's seizure disorder did not meet or equal a Listing impairment is supported by substantial evidence in the record, especially given that the burden is on Plaintiff to show that he satisfies the requirement of the Listing.  Substantial evidence also supports the ALJ's determination that Plaintiff has the RFC to perform other work.

### Conclusion

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.  Accordingly, Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #9) is GRANTED and Plaintiff's Motion to Reverse the Decision of the Commissioner is DENIED (Doc. #7)

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 31, 2009